IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TY H.,[1]

    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 6:21-cv-01220-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Ty H. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title XVI Social Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1978, plaintiff alleges disability beginning August 14, 2015, due to learning disabilities, allergies, diabetes, stroke, hypertension, impaired mobility, and left spastic hemiplegia.[2] Tr. 75-76, 819-20. On May 16, 2018, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 37-60. On September 6, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 20-31.

Plaintiff timely filed an appeal and, based on the stipulation of the parties, the Court reversed the ALJ's decision and remanded the case for further proceedings on April 23, 2020.[3]

On March 15, 2021, a second hearing was held before the ALJ, wherein plaintiff was once again represented by counsel and testified, as did a VE. Tr. 786-808. On April 16, 2021, the ALJ issued a second decision finding plaintiff not disabled. Tr. 760-85.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the November 8, 2015, application date. Tr. 766. At step two, the ALJ determined the following impairments were medically determinable and severe: "Status-post cerebrovascular accident; Obesity; Asperger's disorder; Learning disorder." *Id.* At step three, the ALJ found that plaintiff's impairments, whether considered alone or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

---

[2] Plaintiff previously applied for benefits based exclusively on his mental impairments; his claim was finally denied on September 19, 2006. Tr. 61-74. The alleged onset date in this case corresponds with the onset of a new impairment – i.e., plaintiff's stroke.

[3] On June 20, 2019, plaintiff filed a subsequent application which the ALJ consolidated with the claim currently on appeal. Tr. 763.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R § 416.967(b), except

> [plaintiff] can sit about six hour [sic] and stand/walk about six hours during an eight-hour workday. [He] should be permitted to use a cane when walking or standing. [Plaintiff] can push/pull as much as he can lift/carry. [Plaintiff] must avoid climbing ladders, ropes, and scaffolds. He can occasionally balance. He must avoid hazards including unprotected heights, moving mechanical parts, and operating a motor vehicle for commercial purposes. He can understand, remember, and carryout instructions for no more than simple, routine, and repetitive tasks and can make and perform simple work-related decisions. [Plaintiff] can have occasional contact with supervisors, co-workers, and the general public. As a result of the moderate impairment in concentration, persistence, and pace, in addition to the moderate limitation in understanding, remembering, and applying information, [he] would be off task up to but not including five percent [of the time] scattered throughout the workday.

Tr. 769-70.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 776. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite his impairments, such as collator operator, inserting machine operator, and laundry folder. Tr. 777.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting his subjective symptom testimony; (2) failing to provide a legally sufficient reason to discount the lay testimony; (3) dismissing the opinion of examining physician Mary Storm, M.D., without further developing the record; (4) failing to address or include an RFC restriction to tasks that do not require a strict production pace; and (5) failing to reconcile conflicts between the two VEs regarding the use of a cane. The

Commissioner concedes harmful legal error such that the sole issue on review is the proper legal remedy. Def.'s Resp. Br. 5 (doc. 17).

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

Upon review of the record, the Court finds remand for further proceedings appropriate. Initially, as stated above, it is undisputed that the ALJ committed legal error. Although the Commissioner does not specifically address the errors made by the ALJ, the Commissioner does appear to acknowledge that the ALJ's treatment of the opinions of the state agency consulting sources was harmful. Def.'s Resp. Br. 10-11, 13 (doc. 17). The Commissioner, however, does not concede error as to plaintiff's subjective symptom testimony, the lay testimony, Dr. Storm's opinion, and the VE testimony. *Id.* at 5-8, 11-12, 14.

Further, there are outstanding issues in the record, such that further proceedings would be useful. In particular, the record is ambiguous concerning the extent of plaintiff's physical impairments, as well as the combined effect of his physical and mental conditions. On the one hand, plaintiff has consistently endorsed physical limitations stemming from his 2015 stroke, such as weakness and slower movement on his left side; use of a cane to ambulate; and difficulty

carrying large or heavy items. *See, e.g.*, Tr. 43-44, 49. These limitations are supported by medical evidence. *See* Tr. 540, 757, 1176-77. Indeed, Dr. Storm concluded that plaintiff had "severe" limitations in standing, walking, carrying, squatting, and feeling. Tr. 1177. Dr. Storm also concluded plaintiff had "moderate" limitations lifting, handling, and grasping. *Id.* In addition, treating physician Steven Andersen, M.D., indicated that plaintiff "[m]ust alternate [between] sitting/standing to relieve symptoms." Tr. 757. Plaintiff also has documented mental impairments that have persisted since childhood. *See, e.g.*, Tr. 282-84, 294-95.

On the other hand, the medical record overall reflects that plaintiff's physical condition responded positively to treatment. *See, e.g.*, Tr. 650-51 (physical therapy discharge indicating that plaintiff was "doing well" and had met treatment goals following his August 2015 stroke). And a previous ALJ decision determined that plaintiff's mental impairments were not disabling. Tr. 61-74.

Further, there is nothing in 1300-plus page record before the Court to support plaintiff's subjective symptom testimony concerning his purported need to lie down for fifteen minutes three times per day. In fact, despite seeking regular treatment related to his August 2015 stroke, plaintiff has never reported the need to lie down to any medical provider, such that the first and only mention of this limitation was at the March 2021 hearing. Tr. 795. Despite reporting other symptoms and limitations, he made no mention of needing to lie down to Dr. Storm, or consultive examiner Douglas Smyth, Ph.D., during their clinical interviews, nor did plaintiff mention this limitation at his most recent visit to primary care physician Brittany Whitaker, D.O., on December 11, 2020.[4] Tr. 1164, 1168-78, 1353-58.

---

[4] Although there is consistent mention of Left Spastic Hemiplegia in the record – which is a neuromuscular condition that results in the muscles on one side of the body being in a constant state of contraction – plaintiff has not reported, nor does the medical opinion evidence reflect, a

Page 5 – OPINION AND ORDER

Because the record is ambiguous concerning the extent of plaintiff's allegedly disabling impairments, remand for further proceedings is necessary.[5] *See Treichler*, 775 F.3d at 1101-02. Given the long-standing nature of plaintiff's mental impairments (for which there are a dearth of treatment records), coupled with the onset of physical stroke-related symptoms in 2015, additional medical evidence would be helpful. Therefore, on remand, the ALJ must obtain a medical expert to review the record and assess the combined effects of plaintiff's physical and mental impairments and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 12th day of July, 2022.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

---

need to lie down as a result of this condition. Tr. 383, 964-65, 972, 988, 994, 1209, 1234, 1353, 1358.

[5] While not dispositive, the Court also notes that there is other evidence that casts doubt on whether plaintiff is disabled as a result of his mental impairments. Although plaintiff reported to treating psychologist Laura Sisson, Psy.D., during an intake interview that he was experiencing depression, difficulty concentrating, fatigue, and impaired memory, he failed to seek any follow-up treatment in accordance with her recommendation. Tr. 694, 698. Plaintiff subsequently denied depression and fatigue. *See* Tr. 742, 969, 983, 1002, 1008, 1014, 1165, 1196. Finally, plaintiff denied "any changes in thinking or memory" as a result of his stroke to Dr. Smyth. Tr. 1162. Dr. Smyth also noted that plaintiff's attention span during the interview was average and that "[h]e understood and remembered short, direct instructions," consistent with the RFC. Tr. 1165.